# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

DEVERICK SCOTT                                                                                                    PLAINTIFF
ADC #131042

v.                                                  5:16cv00327-JLH-JJV

DANNY BURL, Warden,
Tucker Max Unit; *et al.*                                                                                       DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

**DISPOSITION**

**I.    INTRODUCTION**

Deverick Scott ("Plaintiff"), an inmate at the Varner Unit of the Arkansas Department of Correction ("ADC"), filed this action *pro se* and pursuant to 42 U.S.C. § 1983. (Doc. Nos. 2, 7.) He alleges Defendants violated his First, Fourth, Eighth, and Fourteenth Amendment rights by their implementation and enforcement of punitive segregation policies.[1] (Doc. No. 7 at 20.) Specifically, he contends he was denied due process and made to suffer cruel and unusual punishment by having to serve consecutive thirty day periods in punitive segregation without adequate forty-eight hour relief in between. (*Id*.) Plaintiff seeks compensatory and punitive damages. (*Id*. at 24-26.)

---

[1] Additional claims stated in Plaintiff's Amended Complaint were previously dismissed without prejudice. (Doc. Nos. 8, 35.)

The remaining Defendants are Brown,[2] Watson,[3] Bundick,[4] Bolden,[5] Mark Stephens, Washington,[6] Wendy Kelley, Dale Reed, Moses Jackson, Grant Harris, and Ray Hobbs. They have filed a Motion for Summary Judgment, contending they are entitled to judgment as a matter of law on Plaintiff's claims. (Doc. No. 68.) Plaintiff has responded (Doc. No. 74), and this matter is now ripe for a decision. After careful review, and for the following reasons, I find summary judgment is appropriate and Plaintiff's claims should be DISMISSED.

## II.   FACTS

It is undisputed that Plaintiff has spent a significant amount of time in punitive segregation due to repeated rule violations. (Doc. No. 70 at 4-5.) According to Plaintiff's Amended Complaint, he was denied "adequate" forty-eight hour relief in between consecutive thirty day periods in punitive segregation starting in 2012.[7] (Doc. No. 7 at 7.) Specifically, he alleges he was not removed from his cell for one day during the forty-eight hour relief period and was denied access to news and media, access to his personal property, and full restoration of his commissary

---

[2] This Defendant's name is Rodney Brown. (Doc. No. 48 at 1.) The Clerk is directed to amend the docket to reflect his full name.

[3] This Defendant's name is Randy Watson. (Doc. No. 48 at 1.) The Clerk is directed to amend the docket to reflect his full name.

[4] This Defendant's name is Chris Budnik. (Doc. No. 48 at 1.) The Clerk is directed to amend the docket to reflect his full and correct name.

[5] This Defendant's name is Kennie Bolden. (Doc. No. 48 at 1.) The Clerk is directed to amend the docket to reflect his full name.

[6] This Defendant's name is Flora Washington. (Doc. No. 48 at 1.) The Clerk is directed to amend the docket to reflect her full name.

[7] To the extent Plaintiff states a claim for violations that occurred prior to October 13, 2013, those claims would be barred by the three-year statute of limitations. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992); Ark. Code Ann. § 16-56-105(3). Additionally, Plaintiff's claims have been limited to alleged violations that occurred at the Varner Unit. (Doc. No. 8 at 4-5.) Plaintiff was housed at the Varner/Varner Supermax Units from June 1, 2012, to March 3, 2015, and then from February 5, 2016, until the present. (Doc. No. 70 at 3.) Accordingly, any claims for alleged violations that occurred between March 3, 2015, and February 5, 2016, have already been dismissed.

privileges, "making him physically still on punitive status for 32 days for 1 disciplinary." (*Id*.) Plaintiff contends this caused him to suffer "emotional, mental injury of humiliation, anxiety, depression, and loss of sleep and being racially discriminated and prejudice[d] against." (*Id*. at 21.)

### III.    SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## IV. ANALYSIS

### A. Official Capacity Claims

Plaintiff has sued Defendants in both their official and personal capacities. (Doc. No. 7 at 20.) He seeks only monetary damages. (*Id*. at 24-26.) Plaintiff's claims against Defendants in their official capacities are barred pursuant to the doctrine of sovereign immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office and, as such, is no different from a suit against the state itself, which is barred by the Eleventh Amendment unless the state has waived its immunity); *Burk v. Beene*, 948 F.2d 489, 493-94 (8th Cir. 1991) (the State of Arkansas has not waived its Eleventh Amendment immunity). Accordingly, I recommend Plaintiff's official capacity claims against Defendants be dismissed.

### B. Personal Capacity Claims

Defendants contend they are entitled to qualified immunity on Plaintiff's claims against them in their personal capacities. (Doc. No. 69 at 4.) Qualified immunity protects government officials who acted in an objectively reasonable manner and shields an official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story Cty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson*, 555 U.S. at 236). Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. *Id*. Upon review of the record in this case, I find the facts shown, construed in the light most favorable to Plaintiff, do not establish a violation of his constitutional rights.

The parties agree that Plaintiff is entitled to a forty-eight hour relief period in between successive thirty day periods in punitive segregation. Defendants have submitted Administrative Directive 12-24, the ADC's policy on punitive segregation and restriction that became effective in 2012. (Doc. No. 70-4.) According to the Directive, inmates may be confined to punitive segregation "for a period up to 30 days." (*Id*. at 7.) Additionally,

> Inmates serving consecutive punitive isolation sentences will receive 48-hour relief at the end of each 30-day sentence. Inmate privileges as previously outlined in this policy will be restored during the 48-hour relief period and will be restricted again at the beginning of the next punitive sentence.

(*Id*.) The Varner Unit's policy on punitive segregation, VU 10.2.0, contains identical language. (Doc. No. 70-5 at 7.) The crux of Plaintiff's argument is that certain privileges were not fully restored to him during forty-eight hour relief periods.

        1.    Removal from Cell

Plaintiff alleges adequate forty-eight hour relief includes being removed from the punitive segregation cell for at least twenty-four hours during the relief period before being returned to the cell for the start of the next punitive sentence. (Doc. Nos. 7 at 20, 74 at 2.) He contends he was repeatedly held in the same cell during his relief periods, resulting in cruel and unusual punishment. (Doc. No. 7 at 20.) A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the "minimal civilized measure of life's necessities." *Id*. (quoting *Rhodes v. Chapman*, 452 U.S. 337, 342 (1981)). The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner. *Id*. (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1977)). To establish deliberate indifference, the plaintiff must show the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety. *Id*. (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).

As Defendants point out, Plaintiff has not alleged his confinement in a punitive segregation cell deprived him of the minimal civilized measure of life's necessities or that it constituted an excessive risk to his health or safety. Instead, he alleges the failure to remove him from the cell for at least one day during relief periods resulted in cruel and unusual punishment. However, neither the Constitution nor ADC policy requires that an inmate be moved from one cell to another during a relief period. Both Administrative Directive 12-24 and VU 10.2.0 describe forty-eight hour relief as a period in which "[i]nmate privileges . . . will be restored." (Doc. Nos. 70-4 at 7, 70-5 at 7.) Neither provides for the removal of an inmate from his cell during the relief period. Defendant Watson, who was Warden at the Varner and Varner Supermax Units from 2013 to 2016,

affirms in his Declaration that ADC policy does not require removal from a punitive segregation cell during relief periods. (Doc. No. 70-6 at 6.) He continues as follows:

> Further, and more importantly, inmates may not be moved to different cells for a variety of reasons. If a vacant cell is not available to move an inmate into, then a punitive inmate will not be moved. If staff time constraints do not allow for their time to be utilized moving inmates around, then they will not be able to move inmates.

(*Id.*) Thus, although an inmate may be moved to a different cell during a relief period, it is not required.

In response, Plaintiff cites *Finney v. Hutto*, 410 F. Supp. 251, 278 (E.D. Ark. 1976), *aff'd*, 548 F.2d 740 (8th Cir. 1977), *aff'd*, 437 U.S. 678 (1978), which held that "the policy of sentencing inmates to indeterminate periods of confinement in punitive isolation is unreasonable and unconstitutional." The district court in *Finney v. Hutto* found that, under the conditions that existed in Arkansas prisons at the time, "a maximum sentence of thirty days is permissible."[8] *Id.* Plaintiff interprets this to mean he must be removed from his punitive segregation cell after thirty days. But his argument ignores the fact that an inmate on forty-eight hour relief is not subject to punitive conditions; that he remains in the same cell does not mean he remains in punitive confinement. The only distinction Plaintiff identifies between punitive segregation cells and other cells is that punitive segregation cells do not have televisions. (Doc. No. 75 at 2.) Because inmates do not have a constitutional right to watch television, this distinction makes no difference. *Russell v. Helder*, No. 5:15CV05082, 2016 WL 4014106, at 6 (W.D. Ark. June 28, 2016) (recommended

---

[8] I note this limitation was based largely on the Court's finding that conditions in punitive isolation were unconstitutional. Indeed, in affirming the district court's imposition of a time limit, the United States Supreme Court noted it was "abundantly clear that the length of isolation sentences was not considered in a vacuum." 437 U.S. at 685. Instead, "[t]he length of time each inmate spent in isolation was simply one consideration among many," and the time limit "might well have been unnecessary" had earlier orders to remedy conditions been heeded. *Id.* at 687.

decision); *see also More v. Farrier*, 984 F.2d 269, 271 (8th Cir. 1993) (inmates have "no fundamental right to in-cell cable television").

Plaintiff has not demonstrated the failure to remove him from his punitive segregation cell during forty-eight hour relief periods deprived him of the minimal civilized measure of life's necessities or constituted an excessive risk to his health or safety. Therefore, he has failed to establish an Eighth Amendment violation, and Defendants are entitled to qualified immunity on this claim.

    2.   Access to News and Media

Plaintiff alleges he was denied access to news and media during periods of forty-eight hour relief, violating his First Amendment rights. (Doc. No. 7 at 20.) Prison regulations alleged to infringe on First Amendment rights are to be judged under a "reasonableness" test. *Turner v. Safley*, 482 U.S. 78, 89 (1987). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id*. There are four factors to be considered in making this determination: (1) whether there is a "valid rational connection" between the prison regulation and the government interest justifying it; (2) whether there is an alternative means available to the prisoner to exercise the right; (3) whether an accommodation would have "a significant 'ripple effect'" on the guards, other inmates, and prison resources; and (4) whether there is an alternative that fully accommodates the prisoner "at de minimis cost to valid penological interests." *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 982-83 (8th Cir. 2004) (quoting *Turner*, 482 U.S. at 89-91).

Defendants contend Plaintiff was afforded access to news and media during his relief periods pursuant to ADC policy. Administrative Directive 12-24 and VU 10.2.0 both state inmates are not allowed to receive newspapers or magazines in punitive segregation. (Doc. Nos. 70-4 at

2, 70-5 at 2.) However, "[d]uring their 48-hour relief, inmates will be allowed to receive the two most current newspapers and magazines on a one-for-one exchange basis." (*Id*.) According to Defendant Watson's Declaration, inmates on forty-eight hour relief will be provided with "any newspapers or magazines that they have been provided by their family or that they have purchased or ordered through an approved publisher." (Doc. No. 70-6 at 4.) Alternatively, an inmate may request "the two most current newspapers and magazines from the prison library," which will be provided during the relief period. (*Id*.) Defendant Watson states the prison library receives a daily subscription to the Arkansas Democrat-Gazette and inmates are given notice when their relief period is about to begin so they can request copies. (*Id*. at 4-5.)

Accordingly, pursuant to ADC policy, Plaintiff was entitled to access news during relief periods by receiving newspapers or magazines his family had provided, purchasing them himself, or requesting them from the library. However, he did not take advantage of any of these methods. Plaintiff argues he was denied access to news because his family could not afford to purchase a subscription for him. (Doc. No. 74 at 3.) As Defendant Watson points out, Plaintiff had sufficient commissary funds to purchase subscriptions himself. (Doc. Nos. 70-6 at 5, 70-7.) But even assuming Plaintiff was at a financial disadvantage, he could have requested copies of the newspaper from the library. Moreover, although prisoners have a First Amendment right to receive published materials subject to reasonable limitations, that right does not create an affirmative duty on prisons to provide news publications to inmates. *Collins v. Burl*, No. 2:11CV40-DPM-BD, 2011 WL 2457532, at 1 (E.D. Ark. June 17, 2011) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

Clearly, the ADC's policy governing access to news and media during relief periods is reasonably related to legitimate penological interests and offers inmates several alternatives to

exercise their right to receive published materials. Plaintiff's failure to avail himself of any of those alternatives does not amount to a constitutional violation. Defendants are entitled to qualified immunity on this claim.

### 3. Access to Personal Property

Plaintiff alleges he was denied access to his personal property during relief periods. (Doc. No. 7 at 20.) He specifically mentions legal materials, pen and paper, envelopes, and hygiene items, although it is not clear whether he is alleging he was denied these items during a punitive segregation period or during a relief period. (*Id*. at 21.) Plaintiff contends the withholding of these items violated his Fourth Amendment right to be free from unreasonable searches and seizures; however, the Fourth Amendment does not apply within the confines of a prison cell, as prisoners have no legitimate expectation of privacy there. *Hudson v. Palmer*, 468 U.S. 517, 526 (1984).

In any event, Plaintiff has not shown he was prevented from accessing his personal property during relief periods. Pursuant to Administrative Directive 12-24 and VU 10.2.0, inmates are not allowed to have personal property while on punitive segregation, although they may have certain enumerated items. (Doc. Nos. 70-4 at 3, 70-5 at 4.) Those items include, but are not limited to, legal materials, pen and paper, envelopes, and hygiene items, including soap, dental hygiene items, a wash cloth, a comb, and deodorant. (Doc. Nos. 70-4 at 3-4, 70-5 at 4.) Additionally, inmates in punitive segregation are allowed to purchase flex pens and paper through the commissary. (Doc. Nos. 70-4 at 4, 70-5 at 5.) They are also allowed to order legal materials from the law library, and those items will be made "readily available" to those inmates who need to meet court deadlines. (Doc. Nos. 70-4 at 3, 70-5 at 3-4.) The ADC's policy on dental services states inmates are provided a toothbrush upon admission and quarterly and provided toothpaste monthly. (Doc. Nos. 70-6 at 5, 70-22 at 2.) Thus, ADC policy allowed Plaintiff to have certain personal property items –

including legal materials, pen and paper, envelopes, and hygiene items, the very items he claims he was denied – during his confinement in punitive segregation *as well as* during relief periods.

The record demonstrates Plaintiff was in fact afforded these items. According to Defendant Watson's Declaration, Plaintiff was given the required hygiene items and purchased multiple other hygiene items through the commissary, even during his punitive segregation periods. (Doc. No. 70-6 at 5.) Plaintiff's commissary records and receipts show he regularly purchased hygiene items, as well as envelopes, postage, pens, and paper, even at times when he was not on forty-eight hour relief. (Doc. Nos. 70-7, 70-14.) Furthermore, Defendants have submitted docket sheets in eight other cases Plaintiff pursued throughout 2013, 2014, 2015, 2016, and 2017, which clearly show he had adequate legal materials throughout his punitive confinement. (Doc. Nos. 70-9, 70-10, 70-12, 70-13, 70-15, 70-16, 70-17, 70-18.)

The record simply does not support Plaintiff's contention he was denied access to his personal property, either during periods of punitive confinement or during relief periods. Therefore, Defendants are entitled to qualified immunity on this claim.

4. Restoration of Commissary Privileges

Plaintiff alleges his commissary privileges were not fully restored during relief periods, causing him to have to choose between legal materials, hygiene items, and food. (Doc. No. 7 at 20-21.) He contends this amounted to an Eighth Amendment violation. (*Id*. at 21.) As previously stated, a prisoner alleging an Eighth Amendment violation must prove the defendant's conduct (1) objectively rises to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities; and (2) reflects a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner. *Revels*, 382 F.3d at 875. To establish deliberate

indifference, the plaintiff must show the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety. *Id*.

>Administrative Directive 12-24 provides as follows:
>
>Inmates on 48-hour relief will be allowed to purchase commissary items, authorized personal hygiene items and legal supplies listed in the Personal Property Section of this policy a minimum of once every 30 days. Purchase limit will be the same as indigent inmates. Legal supplies may be purchased more often if the inmate can document a valid need.

(Doc. No. 70-4 at 3.) The "Personal Property" section of the policy lists items inmates may have in punitive segregation. (*Id*. at 3-4.) As previously noted, these include legal materials, pen and paper, envelopes, soap, dental hygiene items, a wash cloth, a comb, and deodorant. (*Id*.) Inmates may purchase pens and paper through the commissary "at least once monthly or more often if a need is documented and validated." (*Id*. at 4.) Inmates are allowed to have "[c]onsumable items" during forty-eight hour relief only. (*Id*.) The Varner Unit's policy is more specific and limits the amount of commissary items an inmate may purchase while on forty-eight hour relief to twenty-five dollars' worth. (Doc. No. 70-5 at 3.) Additionally, inmates on forty-eight hour relief "may possess only those items, which could reasonably be consumed in 48-hours." (*Id*.)

Thus, ADC policy restores an inmate's commissary privileges during relief periods, albeit with some limitations. Plaintiff's commissary records demonstrate he routinely made purchases while on forty-eight hour relief. (Doc. No. 70-7.) His assertion that the limitations forced him to choose between legal materials, hygiene items, and food is wholly unsupported by the record. Both Administrative Directive 12-24 and VU 10.2.0 provide for the purchase of legal materials, pens, and paper more often than once per month, and Plaintiff's commissary records show he purchased all of these items about once per week. (*Id*.) Furthermore, Plaintiff takes issue with the Varner Unit's policy of allowing commissary purchases only when an inmate's relief period

coincides with a "regular commissary day." (Doc. No. 70-5 at 3.) But if an inmate's relief period does not coincide with a regularly scheduled commissary day, he is still allowed to purchase "personal hygiene items and legal supplies." (*Id.*) In other words, the only items he may not purchase are food items. Importantly, inmates in punitive segregation are served regular meals like general population inmates, the only differences being that meals are served in inmates' cells and those inmates are not served seconds. (Doc. Nos. 70-4 at 5, 70-5 at 5.) When a prison provides for an inmate's basic necessities, he has "no protected property or liberty interest in commissary privileges." *Bennett v. Sheahan*, 1999 WL 967534, at 4 (N.D. Ill. Oct. 5, 1999) (citing *Robinson v. Ill. State Corr. Ctr.*, 890 F. Supp. 715, 718 (N.D. Ill. 1995)); *see also Vega v. Rell*, 2011 WL 2471295, at 25 (D. Conn. June 21, 2011) ("Inmates have no constitutional right to purchase items from the prison commissary."). Plaintiff was never forced to go without food, and his ability to purchase food items through the commissary during relief periods – which the record shows he often did (Doc. Nos. 70-7, 70-14) – was a mere privilege.

Plaintiff has failed to show he was deprived of the minimal civilized measure of life's necessities due to the limitations on his commissary privileges. Defendants are entitled to qualified immunity on this claim.

### 5. Due Process Claims

With respect to each of the four alleged deficiencies – failure to remove him from his cell and denial of access to news and media, his personal property, and full commissary privileges – Plaintiff also suggests his due process rights were violated. (Doc. No. 7 at 20.) "[T]he Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin v. Conner*, 515 U.S. 472, 478 (1995) (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976)). Nonetheless, states may, under certain circumstances, create liberty

interests that are protected by the Due Process Clause. *Id*. at 483-84. Those interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484 (internal citations omitted).

The United States Court of Appeals for the Eighth Circuit has held many times that a thirty day sentence in punitive segregation does not impose an atypical and significant hardship in relation to the ordinary incidents of prison life. *See, e.g.*, *Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002) (thirty days in punitive segregation did not constitute an atypical and significant hardship); *Kennedy v. Blankenship*, 100 F.3d 640, 642-43 (8th Cir. 1996) (thirty days in punitive isolation, including restrictions on mail and telephone privileges, visitation privileges, commissary privileges, and personal possessions, did not constitute an atypical and significant hardship). Plaintiff suggests he was held in punitive segregation for a much longer period, as he was never afforded adequate forty-eight hour relief and his consecutive sentences blended into one another. But, as previously stated, the record simply does not support Plaintiff's argument that he was denied forty-eight hour relief. Even if it did, Plaintiff would be unable to demonstrate a liberty interest. *See Moorman v. Thalacker*, 83 F.3d 970, 973 (8th Cir. 1996) (loss of sixteen days good time, fifteen days in highest level of disciplinary detention, 107 days in progressively less restricted disciplinary detention, and transfer from minimum security institution to medium security institution was not a disruption exceeding the ordinary incidents of prison life). Accordingly, Defendants are entitled to qualified immunity on Plaintiff's due process claims.

### C. Negligence Claims

Plaintiff also claims the denial of adequate forty-eight hour relief constituted negligence on Defendants' part. (Doc. No. 7 at 20.) Pursuant to 28 U.S.C. § 1367(c)(3), a court may decline to exercise supplemental jurisdiction over a related state law claim if it has dismissed all claims over which it has original jurisdiction. Because Plaintiff's § 1983 claims should be dismissed, the Court should decline to exercise supplemental jurisdiction over his state law negligence claims. *See Am. Civil Liberties Union v. City of Florissant*, 186 F.3d 1095, 1098-99 (8th Cir. 1999) (explaining that when state and federal claims are joined and all federal claims are dismissed on a motion for summary judgment, the state claims are ordinarily dismissed without prejudice to avoid needless decisions of state law as a matter of comity).

### V. CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 68) be GRANTED.

2. Plaintiff's remaining claims against Defendants Brown, Watson, Budnik, Bolden, Stephens, Washington, Kelley, Reed, Jackson, Harris, and Hobbs be DISMISSED WITH PREJUDICE, except that his negligence claims be DISMISSED WITHOUT PREJUDICE.

3. Plaintiff's cause of action (Doc. Nos. 2, 7) be DISMISSED.

4. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting these recommendations would not be taken in good faith.

DATED this 5th day of February, 2018.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE